**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **DARLENE CLEMONS,** ) | |
| Plaintiff, ) | |
| v. ) | **CIVIL NO. 3:10CV101** |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Darlene Clemons, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 12) be DENIED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

judgment (docket no. 14) be GRANTED; and that the final decision of the Commissioner be AFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on July 31, 2007, claiming disability due to congestive heart failure, with an alleged onset date of September 11, 2006. (R. at 122, 131, 151, 154.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 63-68; 71-80.) On January 16, 2009, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 16-56.) On May 19, 2009, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where, based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 8-15.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-3.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

2

record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were

applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 10.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of congestive heart failure, hypertension, and substance abuse, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 10-11.) The ALJ next determined that Plaintiff had the RFC to perform light work, except that she could only occasionally climb, balance, stoop, kneel, crouch, or crawl; and on occasion she may need to alternate sitting and standing once an hour. (R. at 11-13.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a waitress because of the levels of exertion required in the position. (R. at 14.) At step five, after considering Plaintiff's age, education, work experience, and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 14-15.) Specifically, the ALJ found that Plaintiff could work as an interviewer, office clerk/document preparer, or receptionist/telephone clerk. (R. at 14-15.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 30-31.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot.

6

for Summ. J.) In support of her position, Plaintiff, who proceeds pro se, generally argues that her poor health prevents her from performing even sedentary work on a full-time basis. (Pl.'s Mot. for Summ. J.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 15-22.)

    **A.**    **The ALJ's opinion and ultimate conclusion that Plaintiff is not disabled and not entitled to benefits is supported by substantial evidence and application of the correct legal standards.**

Plaintiff does not challenge any specific finding made by the ALJ, but generally contends that because of her failing health, she does not retain the RFC to perform even sedentary work on a full-time basis. (Pl.'s Mot. for Summ. J.) She also alleges that "even the simplest of chores are frequently exhausting," and that her medical history, character of her symptoms, and professional and medical opinions support her contention that she is disabled. Id. Because Plaintiff appears to contest the ALJ's RFC determination and conclusion that she had the ability to perform occupations that exist in significant numbers, the Court will address whether the ALJ properly determined Plaintiff's RFC and whether the Commissioner satisfied his burden to prove that there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform.

    **1.**    **The ALJ properly evaluated Plaintiff's credibility and treating physicians' opinions in determining that she retained the RFC to perform light work with some limitations.**

        **a.**    **The ALJ's credibility analysis is supported by substantial evidence.**

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20

C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit (as the immediate controlling appellate authority for this Court) has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. &

8

Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

The ALJ found that although Plaintiff had medically determinable impairments that could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they were inconsistent with the determined RFC. (R. at 12.) The ALJ noted that there was no evidence presented which demonstrated memory and concentration problems that had more than a minimal effect on Plaintiff's ability to function. (R. at 12.) The ALJ also noted that Plaintiff's medical records did not support symptoms which would persist with the severity to preclude her from working for a continuous period of at least twelve months. (R. at 12.) The ALJ further noted that despite Plaintiff's substance abuse and cardiac impairments, she was still able to live independently; take care of her own personal needs; prepare meals; perform household chores; use public transportation; shop, though she used a cart when doing so; walk; and work up to thirty or more hours a week as a waitress. (R. at 13.) Despite the limited evidence, the ALJ still

credited Plaintiff's complaints to an extent, finding that she would be limited to light work with some additional restrictions. (R. at 13.)

Plaintiff's medical records demonstrate that Plaintiff suffered from congestive heart failure and an arrhythmia, conditions which caused a physician to opine in November 2006 that she was severely limited or unable to work for a period of six months. (R. at 222.) However, it was also noted that with treatment Plaintiff could be self-supporting, though the physician was awaiting hospital records and a cardiology assessment before determining her level of congestive heart failure, ability to work, and prognosis. (R. at 222.)

Approximately two months earlier, on September 28, 2006, Plaintiff's hospital discharge report revealed that she was not taking her medications; she was using drugs, smoking cigarettes (about a pack a day), and drinking heavily; her prognosis was poor because of her poor insight, and that Plaintiff reported that she "never felt that she should go to a doctor." (R. at 244-53.) Plaintiff had been admitted to the hospital for severe shortness of breath, which she had suffered from in the past and for which she was advised to see her physician, but failed to do so. (R. at 244.) Plaintiff was discharged apparently without any restrictions but with a variety of medications. (R. at 246.) Plaintiff was again admitted to the hospital for decompensated congestive heart failure and discharged on November 21, 2006, to be followed as an outpatient. (R. at 238.) Records indicate that Plaintiff "felt much better" and that her condition improved before discharge. (R. at 238.) Hospital records also indicated that Plaintiff was "poorly compliant" with regards to her medications for her ailments, heavy smoking, heavy crack cocaine use, and alcoholism. (R. at 240-41.)

Plaintiff was again hospitalized for chest pain and shortness of breath and discharged on

10

November 5, 2008. (R. at 416.) Records concerning her discharge information reveal that Plaintiff was released without any activity restrictions and could return to work or school in two days. (R. at 419.) Plaintiff also received diet instructions and was strongly advised to stop smoking. (R. at 419.)

Approximately two months later, at her hearing before the ALJ in January 2009, Plaintiff testified that she worked approximately ten to fifteen hours a week as a waitress, generally on Saturdays and Sundays (the two busiest days of the week), but was stationed in the "slow section" of the restaurant. (R. at 22-29.) She also testified that she had worked at the restaurant "off and on" for the past three years. (R. at 22.) Plaintiff also alleged that she took her medications "pretty much" as prescribed, and had difficulty with unusual urinary frequency. (R. at 33-34.) She further testified that she lived alone; fixed her own meals; occasionally baked; took care of her personal needs; used public transportation; last used cocaine one year prior; and stopped drinking three to six months prior. (R. at 21, 28, 30-33, 35, 181-85, 213-15.)

The ALJ found that there was no evidence supporting Plaintiff's claims of unusual urinary frequency. (R. at 12.) The ALJ also noted that treatment records indicated that Plaintiff was alert, oriented, and pleasant, indicating no evidence of memory or concentration problems. (R. at 12, 306-17.) After noting that Plaintiff was able to live and function independently despite her substance abuse and cardiac impairments, he nevertheless credited her subjective complaints and found that she was not capable of performing her past relevant work as a waitress, and limited her to light work involving only occasional climbing, balancing, stooping, kneeling, crouching, or crawling, and which would allow her an opportunity to alternate sitting and standing once an hour. (R. at 12-14.) Accordingly, it appears from the record that the ALJ did

11

not act improperly or unreasonably in finding Plaintiff not entirely credible.

      **b.**   **The ALJ's decision regarding the physicians' opinions is supported by substantial evidence.**

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

In finding that Plaintiff retained the RFC to perform light work with some limitations, the ALJ relied on the medical evidence of record, Plaintiff's statements and testimony, and opinion evidence. The ALJ assigned significant weight to the opinions of state agency medical consultants, who determined that Plaintiff retained the capacity to perform light work. (R. at 13, 370-77, 397-98.) The ALJ noted that such opinions were consistent with the objective findings as well as Plaintiff's activities, discussed earlier. (R. at 13.) However, the ALJ found that the opinions of Drs. Haffizulla and Cooke were inconsistent with the evidence of record, and accordingly did not assign such opinions controlling weight.

> i. **There is substantial evidence supporting the ALJ's conclusion that Dr. Hope Haffizulla's opinion was not entitled to controlling weight.**

Dr. Hope Haffizulla, M.D. advised in February 2007 that Plaintiff's condition rendered her severely limited or unable to work for a period of six months. (R. at 222.) However, because Plaintiff was a new patient, Dr. Haffizulla noted that she would await hospital records and a cardiology assessment before determining the level of Plaintiff's congestive heart failure, her ability to work, and future prognosis. (R. at 222.) In September 2007, Dr. Haffizulla modified her opinion, alleging that Plaintiff's congestive heart failure was accompanied by fatigue, was expected to deteriorate, and limited her capacity for self-support for twelve months. (R. at 302.) Dr. Haffizulla also opined that Plaintiff's future prognosis was "unclear." (R. at 302.)

The ALJ considered Dr. Haffizulla's opinions and found that they were inconsistent with treatment records, objective findings, and Plaintiff's admitted "significant" daily activities, and accordingly did not afford the opinions controlling weight. (R. at 13.) As the ALJ noted, and

13

the treatment records reflect, Plaintiff generally denied symptoms such as shortness of breath, chest pain, wheezing, and chest congestion. (R. at 306-17, 406.) Also, though Dr. Haffizulla opined that Plaintiff would be unable to work or support herself for six to twelve months, Plaintiff herself testified that she had held a part-time waitressing job "off and on" for three years, in addition to being able to live and function independently. (R. at 22-29, 222, 302.) Because it appears that the ALJ considered all relevant factors before finding that Dr. Haffizulla's opinion was not entitled to controlling weight, the Court recommends a finding that the ALJ's decision in this regard is supported by substantial evidence and application of the correct legal standard.

        ii.        **There is substantial evidence supporting the ALJ's conclusion that Dr. Charles Cooke's opinion was not entitled to any weight.**

The ALJ also addressed the opinion of Dr. Charles L. Cooke, M.D., an independent physician who reviewed Plaintiff's records at the request of the ALJ. Dr. Cooke opined that Plaintiff's impairments were severe enough to meet Listing 4.02[6], as records reflected

---

[6] Listing 4.02:
> *Chronic Heart Failure*, while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements of *both A and B* are satisfied.
> A.    Medically documented presence of one of the following:
>     1.    Systolic failure (see 4.00D1a(I)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
>     2.    Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure); AND
> B.    Resulting in one of the following:

"numerous" left ventricular ejection fractions ("LVEF") below thirty percent and hospital admissions for congestive heart failure. (R. at 426-29.) However, the ALJ did not assign weight to Dr. Cooke's opinion because such opinion was inconsistent with treatment records and clinical findings. (R. at 11.)

Dr. Cooke appears to opine that Plaintiff satisfied sections 4.02A1, LVEF values below thirty percent during a period of stability, and 4.02B2, three or more separate episodes of acute congestive heart failure within a consecutive 12-month period, of Listing 4.02. (R. at 426-29.) However, treatment records do not reflect that Plaintiff exhibited LVEF values below thirty

---

1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC (medical consultant), preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more separated by periods of stabilization (see 4.00D4c); or
3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:
   a. Dyspnea, fatigue, palpitations, or chest discomfort; or
   b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
   c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic pressure or the preceding systolic pressure measure during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or
   d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

percent during periods of stability, as required by the Listing. Rather, as the ALJ noted, the low LVEF values noted by Dr. Cooke were recorded during episodes of acute congestive heart failure, specifically during the times that Plaintiff was hospitalized. (R. at 11.) Records indicate that during Plaintiff's first documented hospital stay in September 2006, her LVEF was fifteen percent (15%); during her second stay in November 2006, her LVEF upon admission was fifteen percent (15%), and up to twenty-four percent (24%) by the time of her discharge; and during her third admission in October/November 2008 her LVEF was fifteen to twenty percent (15-20%). (R. at 238, 240, 243, 258-62, 409, 416, 420.) Also, as the ALJ noted, many of Plaintiff's records documenting LVEF values were duplicated in the file, and that Dr. Cooke's opinion may have been based on such, rather than several separate instances. (R. at 11; 238, 258-62; 243, 409; 416, 420.) Further, records reflect that Plaintiff's LVEF values were not below thirty percent during periods of stability, as required to meeting section 4.02A. On September 5, 2007, records indicate that Plaintiff's LVEF was forty to forty-five percent (40-45%), and on November 15, 2007, her LVEF was forty-one percent (41%). (R. at 366, 369.) The ALJ also noted that Plaintiff's symptoms had responded to treatment, which is evidenced, for example, by Plaintiff's initial LVEF of fifteen percent (15%) upon one hospital admission, and a LVEF of twenty-four percent (24%) by her discharge. (R. at 11, 238, 240.) Though the ALJ determined that Plaintiff had not satisfied the criteria of section 4.02A, and therefore would not satisfy Listing 4.02, he went on to conclude that there was no evidence of findings consistent with the limitations described in section 4.02B. (R. at 11.) As earlier noted, it appears that Dr. Cooke advised that Plaintiff would satisfy section 4.02B by the nature of her hospitalizations; however, section 4.02B requires three or more hospitalizations in a consecutive twelve-month period. Though

16

Plaintiff's records indicate three hospitalizations, only two of those were during a consecutive twelve month period, which is insufficient to satisfy section 4.02B2. (R. at 238, 244, 412-24.)

Because the ALJ considered all appropriate factors, including the entirety of Plaintiff's medical record, before concluding that Dr. Cooke's opinion was not entitled to any weight, his decision in this regard is supported by substantial evidence and application of the correct legal standards. Accordingly, the ALJ's decision should be affirmed pertaining to this issue.

> **2. The ALJ posed a valid hypothetical to the VE which included all of Plaintiff's abilities and limitations and properly concluded that other works exists in significant numbers in the economy that she could perform.**

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id.

After finding that Plaintiff's RFC precluded her from performing her past relevant work as a waitress, the ALJ went on to conclude that other work existed in significant numbers in the national economy that Plaintiff was capable of performing. (R. at 14-15.) In reaching this decision, the ALJ posed two hypotheticals to a VE, one involving light work and the earlier

17

noted limitations on Plaintiff's work capability, and one involving the lighter category of sedentary work. (R. at 50-53.) The VE responded that such a person would be able to perform a light occupation as an interviewer, or a sedentary occupation as an office clerk/document preparer, receptionist/telephone clerk, or an interviewer. (R. at 50-53.) The ALJ and the VE noted that although the VE's testimony was partially inconsistent with the information contained in the Dictionary of Occupational Titles ("DOT"), the VE testified that the sit/stand option included in Plaintiff's RFC is not in the DOT, but the occupations noted were performed in an office setting and allowed the ability to sit and stand. (R. at 15, 50-52.) Therefore, the ALJ properly relied on the VE's testimony in determining that other work existed in significant numbers in the national economy that Plaintiff was capable of performing. Accordingly, the ALJ's ultimate conclusion that Plaintiff is not disabled is supported by substantial evidence and application of the correct legal standards, and should be affirmed.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 12) be DENIED; that Defendant's motion for summary judgment (docket no. 14) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within**

**fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                     /s/
                                                DENNIS W. DOHNAL
                                                UNITED STATES MAGISTRATE JUDGE

Date: January 6, 2011
Richmond, Virginia